UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
PC Connection, Inc.                                                     )
                                                                                        )
        Plaintiff,                                                         )
                                                                                        )
   v.                                                                            )   Civil Action No. 1:10-cv-348-LM
                                                                                        )   JURY TRIAL DEMANDED
Dayton Crabtree doing business as "Computer    )
Connections" and as "pc-connections.com"          )
                                                                                        )
        Defendant.                                                     )
_____)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff PC Connection, Inc. ("PC Connection") submits this Memorandum of Law in Support of its Motion for Temporary and Preliminary Injunctive Relief and respectfully requests that this Court issue a Temporary Restraining Order in the form of the Order submitted herewith.

**I.    INTRODUCTION**

PC Connection initiated this action upon learning that Defendant Dayton Crabtree d/b/a "Computer Connections" and as "pc-connections.com" ("Crabtree") created and continues to maintain a webpage on the Internet using the domain name "pc-connections.com," which is almost identical to the PC CONNECTION trademark that is federally registered to and owned by Plaintiff PC Connection. Crabtree is using the domain name "pc-connections.com" in order to market and sell computer related services, which is the same business in which PC Connection is engaged and for which its brand is famous. PC Connection has sent "cease and desist" letters by which it demanded that Crabtree stop using the "pc-connections.com" domain name, but Crabtree has refused to do so.

PC Connection now moves for a Temporary Restraining Order and Preliminary Injunction.  Injunctive relief is particularly appropriate in this case given that Crabtree is using a domain name that is virtually identical to the PC CONNECTION mark and to the domain name owned and used by PC Connection.  PC Connection respectfully submits that it is entitled to a Temporary Restraining Order and Preliminary Injunction enjoining Crabtree from using any mark which is confusingly similar to the PC CONNECTION trademark or any other of PC Connection's federally protected trademarks, from using the "pc-connections.com" domain name, and from otherwise holding himself out as PC Connection or any variation thereof.

## II.     FACTUAL BACKGROUND

### A.     PC Connection

PC Connection is a Delaware corporation, the shares of which are traded on the NASDAQ (symbol PCCC), with a principal place of business in Merrimack, New Hampshire.  Amended and Verified Complaint for Preliminary and Permanent Injunctive Relief, Declaratory Relief, and Damages ("Amended and Verified Complaint") at ¶ 2.  For more than twenty years, PC Connection has owned the federal registration for the trademark PC CONNECTION and has used the trademark and tradename in interstate commerce in connection with the marketing and sale of computer products, electronics and related goods and services.  Id. at ¶ 7.  PC Connection has grown over the past two decades from a small proprietorship to a Fortune 1000 company, and presently is one of New Hampshire's largest employers.  Id.

During the past two decades, PC Connection has invested millions of dollars to promote its name and marks, and is the owner of its name and marks in the United States and numerous other countries.  Amended and Verified Complaint at ¶ 12.  These names and marks are distinctive, have become famous and have acquired substantial value and goodwill.  Id.

In the United States, PC Connection has registered PC CONNECTION (USPTO Reg. Nos. 1268322 and 1721844); PC CONNECTION (and designs) (USPTO Reg. Nos. 1268318, 2487203 and 3075167); PC CONNECTION.COM (USPTO Reg. No. 2437186) and many other names and marks based on the CONNECTION and CONNECT formative, all with respect to the field of computer products, electronics and related goods and services.  Amended and Verified Complaint at ¶¶ 8-9.  The PC CONNECTION trademark was registered with the USPTO in 1984 and, thus, is incontestable pursuant to 15 U.S.C. § 1065.  Id. at ¶ 8.  PC Connection is also the registered owner of the Internet domain name pcconnection.com.  Id. at ¶ 11.

      B.      <u>Crabtree's Acts of Infringement</u>

In or about April 2010, Crabtree created and registered the domain name "pc-connections.com."  Amended and Verified Complaint at ¶ 13, and Exhibit A attached thereto.  The "pc-connections.com" domain name links to a webpage through which Crabtree offers computer-related services.  Id.  These computer-related services are also provided by PC Connection.  See id.

PC Connection learned of the existence of this domain name and that it was being used by Crabtree to market and sell computer-related services in direct competition with PC Connection.  Amended and Verified Complaint at ¶ 13.  Accordingly, on April 27, 2010, PC Connection sent a "cease and desist" letter to Crabtree.  Id. at ¶ 14, and Exhibit B attached thereto.

Crabtree responded via e-mail, but did not agree to stop using the "pc-connections.com" domain name.  Amended and Verified Complaint at ¶ 15.  Accordingly, on June 30, 2010, PC Connection sent a second "cease and desist" letter to Defendant.  Id. at ¶ 15, and Exhibit C attached thereto.

PC Connection did not receive a response to its second cease and desist letter and, as of the date hereof, the "pc-connections.com" domain name is still active and accessible to users of the Internet. Amended and Verified Complaint at ¶¶ 15-16.

### C.     Bad Faith Conduct

PC Connection is a major Internet-based marketer and seller of computer products and electronics and is well-known throughout the industry by customers and competitors alike. Amended and Verified Complaint at ¶¶ 2, 7. Crabtree had constructive notice of PC Connection's federal registration and ownership of the PC CONNECTION trademark, as well as the numerous other federally registered trademarks owned and used by PC Connection at the time he created "pc-connections.com" domain name. Id. at ¶ 18. What is more, in attempting to register that domain name he certainly would have discovered that PC Connection's domain name, pcconnection.com, had already been registered. Id. at ¶ 19. Crabtree, nevertheless, chose to create and operate a nearly identical domain name. See id. at ¶ 13.

Moreover, Crabtree's receipt of the cease and desist letters clearly put him on notice of the existence of PC Connection's names, marks and domain name. See Amended and Verified Complaint at ¶¶ 14-15, 20. Despite this notice, Crabtree has continued to use his virtually identical domain name and, thus, has acted in bad faith since at least the receipt of the cease and desist letters. Id. at ¶ 20.

## III.    STANDARD OF REVIEW

"Trademark law seeks to prevent one seller from using the same 'mark' as - or one similar to - that used by another in such a way that he confuses the public about who really produced the goods (or service)." DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir.

4

1992). To prevent such confusion, federal law expressly authorizes this Court to grant injunctive relief to enjoin the unauthorized use of federally registered trademarks. See 15 U.S.C. § 1116(a).

In the First Circuit, a four part test is used to determine whether the granting of preliminary injunctive relief is appropriate. Under this formula, trial courts must consider:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e. the hardship to the non-movant if enjoined contrasted with the hardship to the movant if no injunction issues; and (4) the effect, if any, of the Court's ruling on the public interest.

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Although each factor is significant, the "*sine qua non* of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately v. Massachusetts, 2 F.3d 1221, 1225 (1st Cir. 1993). Likelihood of success on the merits is the "main bearing wall" of the four factor framework. Ross-Simons, 102 F.3d at 15.

As set forth in detail below, PC Connection is able to satisfy each of the elements necessary for obtaining a preliminary injunction. PC Connection, therefore, is entitled to the injunctive relief requested herein.

## IV. ARGUMENT

### A. PC CONNECTION WILL PREVAIL ON THE MERITS

#### 1. Trademark Infringement and Dilution Claims

To prevail on the merits of its trademark infringement claims, PC Connection must establish that: (1) it owns and uses a protected mark; (2) defendant is using the same or a similar mark; and (3) defendant's use of the same or similar mark is likely to confuse the public, causing harm to PC Connection. Star Fin. Servs., Inc. v. Aastar Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996); DeCosta, 981 F.2d at 605.

5

      a.    <u>PC Connection Owns and Uses the Protected Trademarks</u>

The registration of a trademark on the USPTO's Principal Register is prima facie evidence of the registrant's ownership and exclusive right to use the registered mark. 15 U.S.C. § 1115(a). After five consecutive years of continuous use of a registered mark, the registrant's exclusive right to use the mark becomes incontestable. 15 U.S.C. § 1065. Once incontestable, a mark's registration on the Principal Register is conclusive evidence of the registrant's ownership and rights in the mark. 15 U.S.C. § 1115(b).

The PC CONNECTION trademark has been registered on the USPTO's Principal Register since 1984, and PC Connection has continuously used the mark in interstate commerce for more than twenty years. Amended and Verified Complaint at ¶¶ 8, 12. PC Connection also registered "PCCONNECTION.COM" as a trademark in 2001 and has continuously used that mark in commerce since doing so, including use of that mark as an Internet domain name. <u>Id</u>. at ¶ 11. As a result, PC Connection's ownership and use of these marks is incontestable.

      b.    <u>Crabtree Is Using the Same or Similar Marks</u>

The similarity of marks is determined on the basis of the total effect of the mark on the senses. <u>Beacon Insurance Co. v. OneBeacon Insurance Group</u>, 376 F.3d 8, 18 (1st Cir. 2004) (holding that the use of the word Beacon accompanied by a lighthouse logo created a substantial similarity between marks); <u>Equine Tech., Inc. v. Equitechnology, Inc.</u>, 68 F.3d 542, 546 (1st Cir. 1995) (holding that the similarity between two horse care products was "strong"); <u>Keds Corp. v. Renee International Trading Corp</u>., 888 F.2d 215, 222 (1st Cir. 1989) (holding that blue rectangle labels on shoes manufactured by different companies were sufficiently similar to constitute trademark infringement); <u>Chart House, Inc. v. Bornstein</u>, 636 F.2d 9 (1st Cir. 1980) (holding that

a restaurant named Chart House Village was sufficiently similar to plaintiff's trademark of Chart House that preliminary injunctive relief was warranted).

In this case, Crabtree is using a mark, "pc-connections", that is virtually identical to the PC CONNECTION and PCCONNECTION.COM trademarks which are federally registered and used by PC Connection.  See Amended and Verified Complaint at ¶¶ 8-11, 13.  This usage of a virtually identical mark satisfies the second element of the trademark infringement claim.

    c. Crabtree's Use of the Same and Similar Marks Is Likely to Confuse the Public, Causing Harm to PC Connection

The likelihood of confusion analysis requires consideration of eight factors: (1) the similarity of the marks; (2) the similarity of the goods or services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) any evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark.  International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996); Keds Corp., 888 F.2d at 222.

    i. Similarity of Marks

Crabtree is using a domain name that is nearly identical to PC Connection's registered trademark of pcconnection.com.  Viewing each as a whole, the marks and domain names are sufficiently similar to create confusion in the marketplace with regard to the source, origin, and/or sponsorship of the services being marketed and sold by Crabtree.  Equine Tech., 68 F.3d at 546; Keds Corp., 888 F.2d at 222.  In other words, consumers searching the Internet for computer services could easily be directed to Crabtree's business through the "pc-connections.com" domain name instead of to PC Connection's business through its "pcconnection.com" domain name.

7

        ii.   Similarity of Goods and Services

  PC Connection and Crabtree are both engaged in the business of marketing and selling computer related services over the Internet. The parties, therefore, provide substantially similar goods and services to the public. See Equine Tech., 68 F.3d at 546 ("Both products belong in the narrow category of hoof care products . . . [and, thus,] the similarity between products is strong"); Chart House, 636 F.2d at 10 (trial court construed the factors for trademark infringement "too narrow" when it held that a restaurant and a "shopping, living, and dining complex" did not provide similar goods and services).

        iii.  The Relationship Between the Parties' Channels of Trade, Advertising, and Class of Prospective Purchasers

  Channels of trade, advertising, and prospective purchasers are three classes that the courts generally consider together. Star Fin., 89 F.3d at 10 n.3; Aktiebolaget Electrolux v. Amatron International, Inc., 999 F.2d 1, 3 (1st Cir. 1993). As explained above, both PC Connection and Crabtree are engaged in the business of advertising, marketing and selling computer-related services over the Internet. Both parties, thus, direct their products to similar customers and prospective customers. The First Circuit has noted that there is "a special likelihood of confusion where there is a recognizable mutuality of potential customers." Chart House, 636 F.2d at 10. Here, the parties' services are directed at the same potential customers and, indeed, Crabtree appears to have selected a domain name intentionally designed to divert unsuspecting consumers to his unauthorized webpage. Accordingly, there is a very significant likelihood that Crabtree's use of the pc-connections.com domain name will deceive consumers and cause confusion in the marketplace.

       iv. Evidence of Actual Confusion

Although evidence of actual confusion is not necessary to show a likelihood of confusion, see Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 377 (1st Cir. 1980), here, PC Connection suspects, but has not yet had the opportunity to prove, that consumers are actually being confused.

       v. Crabtree's Intent in Using the Marks

Without question, it can be inferred from the facts and circumstances that Crabtree intended to use the pc-connections.com domain name in order to capitalize on PC Connection's name, goodwill, and business reputation. Crabtree knew or should have known of the existence of PC Connection's family of registered trademarks when he created the virtually identical domain name that links directly to his webpage. PC Connection is a major Internet-based marketer and seller of computer and electronics products and, as a Fortune 1000 company, is well-known throughout the industry by consumers and competitors alike. Amended and Verified Complaint at ¶¶ 2, 7. It strains credulity to believe that Crabtree was not aware of PC Connection, its names and marks and/or its domain name when he created and began operating the pc-connections.com webpage. What is more, in attempting to register the domain name pc-connections.com, Crabtree would have discovered that PC Connection's domain name, pcconnection.com, had already been registered. He nevertheless chose to create and operate a webpage using a nearly identical domain name. See id. at ¶ 13.

Even assuming, for the sake of argument, that Crabtree was somehow unaware of PC Connection, his receipt of the cease and desist letter clearly put him on notice of the existence of PC Connection's names, marks and domain name. Despite this notice, Crabtree has continued to

9

use PC Connection's names, marks and a substantially similar domain name and, thus, has acted in bad faith at least since the receipt of the cease and desist letters.

### vi. Strength of the PC Connection Mark

The strength of a given trademark depends on its inherent distinctiveness and its commercial strength in the marketplace. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 32 (1st Cir. 1987). In determining a trademark's relative strength, a court must look to "the length of time a mark has been used and the relative renown in the field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark." See Keds Corp., 888 F.2d at 222 (*quoting* Boston Athletic Ass'n, 867 F.2d at 32).

This Court has previously recognized the substantial strength the PC CONNECTION trademark has acquired over the past twenty years. PC Connection v. Programmer's Connection, Inc., No. CV-92-206-M, 1994 WL 258656 (D.N.H. Feb. 1, 1994). PC Connection is a well-known leader in the computer and electronic products market and for more than twenty years has used both the PC CONNECTION trademark and tradename, together with its family of registered marks based on the CONNECT and CONNECTION formative in interstate commerce, and in connection with the marketing and sale of computer products, electronics and related goods and services. Amended and Verified Complaint at ¶¶ 7-9. What is more, PC Connection has invested millions of dollars over the past two decades to promote its name and marks and through these efforts has developed into a Fortune 1000 company. Id. at ¶ 12. In light of PC Connection's success, the PC CONNECTION mark has considerable strength in the computer and electronics field. See Beacon Mutual, 376 F.3d at 19 (recognizing the strength of a mark that has been continually used for nine years).

### 2. Cyberpiracy Claim

The Anticybersquatting Consumer Protection Act of 1999 (the "ACPA"), 15 U.S.C. § 1125(d), "created a remedy for trademark violation in the registration, trafficking, or use of a domain name." DaVinci Technology Corp. v. Rubino, 2005 WL 124962 at *6 (D.N.J. May 25, 2005); Sporty's Farm v. Sportsman's Market, Inc., 202 F.3d 489, 496 (2d Cir. 2000). To succeed on a claim for cyberpiracy under 15 U.S.C. § 1125(d), a plaintiff must establish the following elements:

> (1) the mark must be distinctive and entitled to protection; (2) the allegedly infringing domain names must be "identical or confusingly similar;" and (3) defendants must have had a bad-faith intent to profit from the plaintiff's trademarks.

DaVinci Technology Corp., 2005 WL 1249462 at *7.

#### a. Crabtree's Domain Name Is Nearly Identical and Confusingly Similar to PC Connection's Distinctive Marks

The analysis of the first two elements of cyberpiracy is similar to the analysis of ownership and identify/similarity of marks in a claim of trademark infringement. DaVinci Technology Corp., 2005 WL 1249462 at *7. For the same reasons described above, PC Connection has demonstrated that it is the owner of distinctive trademarks and that these marks are famous. PC Connection has also demonstrated that Crabtree is using a mark that is virtually identical to the PC CONNECTION mark on his webpage and that Crabtree is using a confusingly similar domain name to direct customers to his website.

#### b. Crabtree Acted in Bad Faith

The ACPA includes nine factors to aid courts in determining whether a defendant had a bad faith intent to profit from a plaintiff's mark. 15 U.S.C. § 1125(d)(1)(B)(i)(I-IX). These factors are not required elements, but rather "indicia" of bad faith which a court may consider.

11

Sporty's Farm, 202 F.3d at 498.  The enumerated factors include, among others, (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify the person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's intent to divert consumers from the mark's owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site; and (5) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.  15 U.S.C. § 1125(d)(1)(B)(i)(I-IX).

Here, it would seem to be beyond dispute that Crabtree registered the pc-connections.com domain name in order to trade on the goodwill established by PC Connection over the past twenty years, to divert PC Connection customers to his website, and to profit from the prominence and strength of the PC Connection name and trademark.  Crabtree is not and has never been authorized to use the name PC Connection, the PC CONNECTION mark, or the pcconnection.com domain name.  Amended and Verified Complaint at ¶ 1.  All such rights belong exclusively to PC Connection.  See id.  Crabtree, therefore, has no right to claim any association with the name PC Connection.  Equally plain, Crabtree could not have believed that he had a right to use "pc-connections.com" as a domain name, because this phrase is so similar to PC Connection's pcconnection.com domain name and to its PC CONNECTION and PCCONNECTION.COM marks.

Finally, PC Connection and the PC CONNECTION mark are famous within the meaning of 15 U.S.C. § 1115 and, thus, Crabtree clearly was on notice of the existence of the PC CONNECTION mark and domain name when he registered pc-connections.com as a domain name. Indeed, the strength of the PC Connection name and mark undoubtedly motivated Crabtree to choose that domain name.

### B.  PC CONNECTION WILL SUFFER IMMEDIATE AND IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED

There is a presumption in trademark infringement cases that infringement causes irreparable harm. Amer. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 4 (1st Cir. 1997); Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992) ("Trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified."). For more than two decades, PC Connection has devoted substantial time and expense to developing a good reputation in the computer product and electronic product market. Amended and Verified Complaint at ¶ 7. Crabtree's unauthorized use of a domain name which is virtually identical to PC Connection's name, marks, and domain name threaten to cause harm to PC Connection's good reputation. Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697 (1st Cir. 1987) ("Few harms are more corrosive than the inability of a trademark holder to control the quality of bogus articles though (erroneously) derived from it."). Consequently, PC Connection is being irreparably harmed by Crabtree's unauthorized use of its name, marks, and domain names.

### C.  THE BALANCING OF HARMS WEIGHS IN FAVOR OF GRANTING INJUNCTIVE RELIEF

The ability of a defendant to cause injury to a trademark owner during the pendency of the lawsuit, and into the future, is a significant factor in determining the propriety of granting

injunctive relief.  <u>Camel Hair and Cashmere Indust. of America, Inc. v. Associated Dry Goods Corp.</u>, 799 F.2d 6, 13 (1st Cir. 1986).  Here, Crabtree's ability to cause harm to PC Connection's business reputation and goodwill is substantial.  PC Connection has taken substantial steps and invested significant resources to insure the quality of the goods and services provided to its customers.  If Crabtree were to provide substandard services which the customer believed were actually provided by PC Connection, PC Connection's goodwill and business reputation will be damaged.  Temporary and preliminary injunctive relief is necessary to prevent this risk of irreparable harm to PC Connection's goodwill and business reputation. In any event, consumers seeking to do business with PC Connection because of its reputation are entitled to seek out PC Connection without being misled by Crabtree.

In contrast, any hardship imposed on Crabtree by the issuance of a Temporary Restraining Order would be minimal.  The issuance of a Temporary Restraining Order would not force Crabtree out of business.  Rather, Crabtree could continue to provide computer related services through the Internet simply by using a different domain name.  Thus, any hardship imposed on Crabtree as a result of a Temporary Restraining Order and Preliminary Injunction would be minimal.

**D.     ENFORCEMENT OF THE TRADEMARK LAWS WILL BENEFIT THE PUBLIC**

Trademark and unfair competition laws, including the ACPA, protect the public by providing a mechanism for minimizing confusion as to the source of goods and services.  <u>See</u> <u>DeCosta</u>, 981 F.2d at 605; <u>Sporty's Farm</u>, 202 F.3d at 496.  Given the likelihood that PC Connection will succeed on the merits of its trademark infringement claim, trademark dilution claim and cyberpiracy claim, the public interest weighs in favor of granting an injunction to protect PC Connection's trademark and domain name.

### E. PC CONNECTION'S OTHER CAUSES OF ACTION ALSO ENTITLE IT TO THE TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF SOUGHT HEREIN

In addition to the trademark infringement, trademark dilution, and cyberpiracy claims, PC Connection's Amended and Verified Complaint also asserts causes of action for Unfair Competition and False Designation of Origin in violation of 15 U.S.C. § 1125(a) and Unfair and Deceptive Trade Practices in violation of N.H. RSA 358-A:2. Amended and Verified Complaint at ¶¶ 38-50. Because PC Connection's claims of infringement and cyberpiracy are strong enough to establish the case for injunctive relief, PC Connection has not at this time briefed the merits of its other causes of action. Suffice it to say, however, PC Connection has an equally compelling case for injunctive relief under each of those claims.

### F. THE PRELIMINARY INJUNCTION BOND REQUIREMENT SHOULD BE WAIVED IN THIS CASE

PC Connection requests that it not be required to post a bond in accordance with Rule 65(c) of the Federal Rules of Civil Procedure. While Rule 65(c) requires a bond, the amount remains in the Court's discretion and can even be set at zero. See Crowley v. Local No. 82 Furniture and Piano, 679 F.2d 978, 999-1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984); Hill Design, Inc. v. Vivian Hodgdon, Civ, No. 03-074-M, slip op. at 15 (D.N.H. 2003). In considering the propriety of a bond in any given injunction context, the First Circuit has identified three factors to be balanced: the likelihood of harm to the enjoined party; the hardship that a bond requirement would impose on the party seeking injunctive relief; and the competitive positions of the parties. Crowley, 679 F.2d at 999-1000. This determination also includes likelihood of success on the merits where the likelihood is "extraordinarily high." Id. at 1000 n.25; Arkansas Best Corp. v. Carolina Freight Corp., 60 F. Supp.2d 517, 520-21 (4th Cir.

1999) (considering likelihood of success on the merits, including likelihood of imminent and irreparable harm to enjoining party from infringement, in approving zero bond amount).

In this case, PC Connection has demonstrated an "extraordinary high" likelihood of success on the merits due to Crabtree's use of a domain name that is virtually identical to PC Connection's PC CONNECTION and PCCONNECTION.COM's trademark and domain name and has established that Crabtree is likely to cause confusion in the marketplace with respect to the source, origin and sponsorship of the services being sold by Crabtree.  As there is an extraordinarily high likelihood that PC Connection will succeed on the merits of its claims, PC Connection should not be required to post a bond.  <u>Arkansas Best Corp.</u>, 60 F. Supp.2d at 520-21.

## V.   CONCLUSION

For the reasons set forth above, PC Connection respectfully requests that the Honorable Court issue a Temporary Restraining Order in the form of the Proposed Temporary Restraining Order submitted herewith, and enjoin Crabtree from continuing to use PC Connection's name, trademarks and domain name.

Respectfully submitted,

**PC CONNECTION, INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, PA**

Dated:  August 17, 2010         By  /s/ Steven E. Grill
                                     Steven E. Grill, Bar No. 7896
                                     Anne E. Trevethick, Bar No. 18994
                                     111 Amherst Street
                                     Manchester  NH  03105
                                     (603) 669-1000
                                     sgrill@devinemillimet.com

16