UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
PC Connection, Inc.                         )
                                            )
        Plaintiff,                     )
                                            )
  v.                                        )    Civil Action No. 1:10-cv-348-LM
                                            )
Dayton Crabtree doing business as "Computer )
Connections" and as "pc-connections.com"    )
                                            )
        Defendant.                     )
_____)

### PLAINTIFF'S POST HEARING MEMORANDUM

Plaintiff, PC Connection, Inc. ("PC Connection"), respectfully submits the following Post Hearing Memorandum in further support of the its request for preliminary injunctive relief and to summarize the content and legal effect of the evidence received on October 5, 2010.

**I.    FACTS**[1]

    **A.    PC Connection**

PC Connection is a successful publicly held company based in New Hampshire, which markets and sells computer products, electronics and related goods and services. Its services, also known as "solutions," include (1) working with customers to determine their needs; and (2) technical support such as product set-up and installation. According to its 2009 Annual Report (Pl.'s Ex. 1), PC Connection had nearly $1.6 billion in revenue in 2009 and has 1500 employees in numerous states. The company started as a mail order business nearly 30 years ago, but today relies heavily on the Internet both for "e-commerce" sales and for other forms of communication

---

[1] Unless otherwise noted, the following facts are based on the oral testimony of Pamela Carter. In addition, unless otherwise noted, the facts are believed to be undisputed and should be deemed to have been established for purposes of the pending motion for a preliminary injunction.

with customers and potential customers.  PC Connection owns 60 federally registered trademarks, including PC CONNECTION and PC CONNECTION.COM and many other variants of the "PC CONNECTION" name.  (Pl.'s Ex. 5).  Many of these trademarks are incontestable.  (*Id.;* Doc. No. 6 at ¶¶ 8, 11).  PC Connection also owns approximately 200 Internet domain names, including pcconnection.com, which is its primary domain.

PC Connection also actively and extensively promotes the PC Connection brand name on the Internet and through national publications such as PC Magazine.  (Pl.'s Ex.s 2-3).  It spends approximately $18 million yearly on advertising.  In addition, it actively protects its trademark and domain name portfolio by monitoring the Internet for infringing uses and procuring as many similar Internet domain names as it can.

### B. Crabtree's Infringement And Cybersquatting

Defendant Dayton Crabtree ("Crabtree") owns a business in Hedgesville, West Virginia, known as "Computer Connection."  In mid-April 2010, Crabtree created and registered the domain name "pc-connections.com."  (Crabtree Testimony; Pl.'s Ex. 6).  When active, the domain name links to the Computer Connection webpage, where Crabtree offers computer-related services such as product set-up and installation that are promoted on his webpage as "solutions."  (Pl.'s Ex. 7).[2] Before selecting and registering "pc-connections.com," Crabtree investigated other names and used Facebook to conduct a survey of his friends to determine which of several names would be best. (Crabtree Testimony).

PC Connection did not authorize Crabtree to use "pc-connections.com".  On April 26, 2010, PC Connection learned that Crabtree had created and registered "pc-connections.com," and a day later, PC Connection's counsel sent Crabtree a "cease and desist" letter demanding that he stop using the infringing name and offering to pay the registration fee if he would transfer the registration.

---

[2] PC Connection provides services similar to those offered by Crabtree in all 50 states, including West Virginia.

2

(Pl.'s Ex.s 6, 8).  Although now plainly aware that his new domain name was infringing PC Connection's trademarks and domain names, Crabtree did not stop using it.  Instead, Crabtree wrote PC Connection's counsel, suggesting that he was going to continue using the name and would not agree to transfer it unless he received additional compensation.  (Pl.'s Ex. 9).

PC Connection sent a second "cease and desist" letter to Crabtree on June 30, 2010, reiterating its previous demand and explaining that this was its final position.  (Pl.'s Ex. 10).  Crabtree did not respond, but instead continued using the infringing domain name to compete with PC Connection in West Virginia.  (Crabtree Testimony).  PC Connection then commenced this lawsuit. Its litigation counsel sent an email to Crabtree, notifying him of the lawsuit and attaching a copy of the Complaint.  (Doc. No. 12-3).  Once again, Crabtree did not stop using the infringing mark to compete with PC Connection.  Instead, Crabtree sent an email making his earlier demand for money even more explicit, stating "if I can procure a relevant .com domain name and am compensated for previous marketing expenses, domain name costs, *and equal future marketing of a different domain name*, I am willing to work with PC Connection."  (*Id.*) (emphasis added).

This Court issued a Temporary Restraining Order on August 20, 2010, specifically directing Crabtree to, among other things, "disable the link from 'pc-connections.com' to his webpage immediately upon receiving notice of the issuance of [the Temporary Restraining Order]" and enjoining [Crabtree] from, among other things, "using the Internet domain name 'pc-connections.com.'"  (Doc. No. 8).  Although Crabtree admits he was notified of this Order almost immediately, he did not disable the link until August 27, 2010 at the earliest.   (Crabtree Testimony; Pl.'s Ex. 11).  What is more, PC Connection had to remind Crabtree in writing that the Order applied to all uses of the infringing name.  (Pl.'s Ex. 12).  Yet, even as of the October

3

5, 2010 hearing, Crabtree was continuing to use the domain name for email and other purposes. (Crabtree Testimony; Pl.'s Ex. 13).

## II. ARGUMENT

### A. This Court Has Personal Jurisdiction Over Crabtree[3]

Under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court has "allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.1986) (*citing Calder*, 465 U.S. at 789). *See also Noonan v. Winston Co.*, 135 F.3d 85, 91 n. 4 (1st Cir. 1998) (in tort context, "defendant must only be shown to have intentionally directed an act, tortious or otherwise, toward the forum state").

Here, Crabtree committed several separate intentional torts aimed at PC Connection, a New Hampshire resident, with knowledge that the harm resulting from those acts would be felt in New Hampshire. First, Crabtree committed the statutory tort of intentional trademark infringement when, after learning of PC Connection's claim of infringement on or about April 27, 2010, he continued to use the infringing name.[4] Second, Crabtree refused to stop using the Internet domain name and he also refused to transfer the name unless he was paid money by PC Connection; this is intentional cybersquatting. Through these intentional actions, Crabtree effectively "reached into"

---

[3] The *prima facie* standard of review should still be applied in deciding Crabtree's Motion to Dismiss for lack of personal jurisdiction. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir. 1997) ("[A]ll litigants effectively are on notice that motions to dismiss for want of personal jurisdiction will be adjudicated under the prima facie standard unless the court informs them in advance that it will apply a more demanding test."). Even though the evidentiary hearing touched on the issue of personal jurisdiction, PC Connection has not yet had an opportunity to conduct jurisdictional discovery to test Crabtree's allegations concerning the somewhat limited nature of his business activities, nor did the Court advise the parties that a more rigorous standard of review would be applied. Applying this standard, PC Connection has made out the requisite showing of personal jurisdiction over Crabtree. Moreover, even if a more rigorous standard were to be employed, PC Connection has proved by a preponderance of the evidence that this Court has jurisdiction over Crabtree.

[4] This conduct also constitutes the intentional torts of common law unfair competition and statutory unfair trade practices.

4

New Hampshire by making the payment of money a condition precedent to his cessation of the use PC Connection's trademarks and domain name. (Pl.'s Ex.s 8-10; Doc. No. 12-3).

The focus of the purposeful availment prong of the specific jurisdiction analysis is on "voluntariness and foreseeability." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). Regardless of the party who initiates contact, courts have held that where a defendant has knowledge that his tortious activities will likely cause injury in the forum state, these activities are sufficient to make it foreseeable that the party might be held accountable for those actions in the forum where the injury is felt. *See, e.g., Northern Laminate Sales, Inc. v. David*, 403 F.3d 14, 25-26 (1st Cir.2005); *Nutrisystem.com, Inc. v. Easthaven, Ltd.*, 2000 WL 1781924 at *1 (E.D. Pa. 2000).

Here, although PC Connection initially contacted Crabtree, Crabtree's conduct became intentional -- and aimed at New Hampshire -- when he made demands for compensation as a condition for any discussion of cessation of the infringing use or for discussion concerning transfer of the domain name. (Pl.'s Ex. 9). He eventually clarified that his demand included payment not only for "for previous marketing expenses [and] domain name costs," but also for "equal future marketing of a different domain name." (Doc. No. 12-3). When Crabtree's demands were rejected, he carried through on his implicit threats by continuing to use the infringing name. These demands and continued infringement were intentional actions taken with the knowledge that they would cause injury to PC Connection in New Hampshire.

There can be no question that the brunt of the harm caused by Crabtree's actions clearly is suffered in New Hampshire and no question that Crabtree knew it was likely to be suffered here.[5] On several occasions, Crabtree was informed that his acts were impacting PC Connection. (Pl.'s Ex.s 8-10; Doc. No. 12-3). Crabtree had to have been aware that the brunt of the harm from his

---

[5] The practice of holding domain names for ransom with an intent to profit from selling the domain names to the mark owner is "the paradigmatic harm targeted by the [ACPA]." *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (internal quotations and citations omitted).

5

actions would be felt in New Hampshire and yet he repeatedly decided to continue those actions.[6] On these facts, this Court can properly exercise personal jurisdiction over Crabtree.

### B. PC Connection's Motion For A Preliminary Injunction Should Be Granted

PC Connection has established each of the following: (1) that it is likely to succeed on the merits of his claims; (2) that it will likely suffer irreparable harm in the absence of an injunction; (3) that issuance of the requested injunction would burden Crabtree less than denying an injunction would burden PC Connection; and (4) that issuance of an injunction is consistent with (or at least not contrary to) the public interest. *See, e.g., Waldron v. George Weston Bakeries, Inc.*, 570 F.3d 5, 9 (1st Cir. 2009).[7]

#### 1. Likelihood of Success on the Merits

To prevail on the merits of its trademark infringement claims, PC Connection must establish that: (1) it owns and uses a protected mark; (2) defendant is using the same or a similar mark; and (3) defendant's use of the same or similar mark is likely to confuse the public, causing harm to PC Connection. *Star Fin. Servs., Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996).

PC Connection owns the PC CONNECTION and PC CONNECTION.COM trademarks and has continuously used these marks in interstate commerce for well over five years. (Pl.'s Ex. 5; Doc. No. 6 at ¶¶ 8, 11). Such use renders PC Connection's exclusive right to uses these trademarks incontestable and is conclusive evidence of its ownership and rights in the marks. *See* 15 U.S.C. §§ 1115(b), 1065.

---

[6] Indeed, his activities since learning of the Temporary Restraining Order hardly suggest innocent or unintentional conduct, but rather indicate that either he believes he can continue to use the infringing name without consequences or else that the threat of having to litigate in West Virginia will force PC Connection to pay him the "compensation" he has demanded. (Crabtree Testimony: Pl.'s Ex. 13).

[7] "The sine qua non of this four-part inquiry is likelihood of success on the merits." *New Comm Wireless Serv. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). "The importance of that inquiry is magnified in trademark cases because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006).

Crabtree admits that he is using the domain name "pc-connections.com" (Crabtree Testimony; Pl.'s Ex.s 7, 12-13) to promote services identical to those offered by PC Connection in the same market. There should be no doubt that "pc-connections" is substantially similar to "pc connection".

Finally, the likelihood of confusion is high. This analysis requires consideration of eight factors: (1) the similarity of the marks; (2) the similarity of the goods or services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) any evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the Pl.'s mark. *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996). The evidence, applied to this test, establishes that Crabtree's use of "pc-connections.com" is likely to result in consumer confusion.

First, as already noted above, Crabtree is using a domain name that is nearly identical to PC Connection's registered trademarks. The marks and domain names are sufficiently similar to create confusion in the marketplace with regard to the source, origin, and/or sponsorship of the services being marketed and sold by Crabtree. *See, e.g., Equine Tech., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 546 (1st Cir. 1995). PC Connection and Crabtree both market and sell computer related services, also referred to as "solutions", over the Internet (Crabtree Testimony; Pl.'s Exs. 3, 7) and this satisfies the second through fifth factors. Indeed, since the parties direct their services to the same potential customers, there is "a special likelihood of confusion." *See Chart House, Inc. v. Bornstein*, 636 F.2d 9, 10 (1st Cir. 1980). As for the sixth factor,"[w]hile evidence of actual confusion is often deemed the best evidence of possible future confusion, proof of actual confusion is not essential to finding likelihood of confusion." *Borinquen Biscuit*, 443

7

F.3d at 120 (internal quotations and citations omitted). At the October 5, 2010 hearing, PC Connection relayed evidence that consumers get confused when other companies create domain names similar to its own and have blamed PC Connection for poor service they have received when doing business with these companies. As for the seventh factor -- Crabtree's intent -- while his initial motive may have been pure, his subsequent demands for compensation from PC Connection in exchange for stopping infringement were anything but. (Pl.'s Ex. 9; Doc. No. 12-3). In this regard, PC Connection's letters had unmistakably put him on notice of PC Connection's ownership rights in the name he was using. (Pl.'s Ex.s 8, 10, Doc. Nos. 8; 12-3).

Finally, the strength of PC Connection's trademarks is evidenced by the well-known nature of the company as well as its extensive advertising activities.

For reasons similar to those described above, PC Connection is also likely to prevail on its cyberpiracy claim, which requires proof of the following elements:

> (1) the mark must be distinctive and entitled to protection; (2) the allegedly infringing domain names must be "identical or confusingly similar;" and (3) defendants must have had a bad-faith intent to profit from the Pl.'s trademarks.

*DaVinci Technology Corp. v. Rubino*, 2005 WL 124962 at *7 (D.N.J. May 25, 2005).[8] PC Connection indisputably owns a distinctive trademark and Crabtree indisputably is using a confusingly similar domain name to direct customers to his website. Crabtree's actions upon learning of PC Connection's rights, including his refusal to stop using the infringing name unless his demands for "compensation" were satisfied, plainly evince a bad faith intent to profit from his use of PC Connection's protected trademarks. (Pl.'s Ex. 9; Doc. No. 12-3).

### 2. Immediate and Irreparable Harm

---

[8] A bad faith intent to profit from a domain name can arise either at the time of registration or at any time afterwards. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 385 (2d Cir. 2003).

There is a presumption in trademark infringement cases that infringement causes irreparable harm.  *Amer. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 4 (1st Cir. 1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992).  Similarly, in cybersquatting cases, "irreparable harm may be presumed where there is a likelihood of success on the merits."  *Vogster Entm't, LLC v. Mostovoy*, 2009 WL 691215 at *6 (E.D.N.Y. Mar. 16, 2009).  Having established a likelihood of success on the merits, it is presumed that Crabtree's infringement and cybersquatting are causing irreparable harm to PC Connection.  Crabtree has made no showing that rebuts this presumption.

### 3. Relative Burdens of the Parties and the Public Interest

Finally, the balance of hardships and public interest both favor granting the requested relief.  When first alerted to the infringement, Crabtree had only been using the offending name a few weeks, at most.  (Pl.'s Ex.s 6-8).  Although he claimed to have already spent a lot of money to market this name, to date he has produced no evidence whatsoever to back up that questionable assertion.  Plainly, he should not be allowed to use his marketing expenses after he was alerted to the infringement on April 27, 2010 to support a claim of hardship.

What is more, Crabtree has now reluctantly admitted that he has had other domain name options all along and that almost right up until the day that he registered the infringing domain name, other potential names were still under consideration.  (Crabtree Testimony).  Any hardship that issuance of a preliminary injunction might cause Crabtree is thus outweighed by the irreparable harm that PC Connection may sustain to its valuable trademarks, reputation and goodwill.

Public policy certainly favors preventing and deterring consumer confusion.  Trademark and unfair competition laws protect the public by providing a means to minimize the confusion

9

consumers may experience in attempting to obtain desired goods and services. *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992). Trademark law also "encourages the production of quality products and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability quickly to evaluate the quality of an item offered for sale." *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164 (1995) (internal quotations and citations omitted). This policy has become even more important in the Internet age, where a consumer can easily mistype a trademark into a web browser or search engine.[9] Therefore, the public interest would not be adversely affected by granting PC Connection the limited injunctive relief.

## III. CONCLUSION

For the reasons stated herein, as well as in PC Connection's previous filings, which are incorporated as though fully set forth herein, PC Connection's Motion for preliminary injunctive relief should be granted.

Respectfully submitted,

**PC CONNECTION, INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, PA**

Dated:  October 12, 2010         By:   /s/ Steven E. Grill
                                  Steven E. Grill, Bar No. 7896
                                  Anne E. Trevethick, Bar No. 18994
                                  111 Amherst Street
                                  Manchester  NH  03101
                                  (603) 669-1000
                                  sgrill@devinemillimet.com

---

[9] Indeed, the ACPA was passed "to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks." *Sporty's Farm v. Sportsman's Market, Inc.*, 202 F.3d 489, 495 (2d Cir. 2000) (internal quotations and citations omitted).

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has this day been sent to Dayton Crabtree, *pro se,* via U.S. first-class mail.

Dated: October 12, 2010                                       /s/ Steven E. Grill
                                                                                   Steven E. Grill